# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| DEANDRE L. GREEN,<br><br>  Plaintiff(s),<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>  Defendant(s). | Case No.: 2:17-cv-01339-APG-NJK<br><br>**REPORT AND RECOMMENDATION** |

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits pursuant to Titles II and XVI of the Social Security Act. Currently before the Court is Plaintiff's Motion for Reversal and/or Remand. Docket No. 16. The Commissioner filed a response in opposition and a Cross-Motion to Affirm. Docket Nos. 19-20. Plaintiff filed a reply. Docket No. 21.[1] The parties both filed supplemental briefs. Docket Nos. 24, 25. This action was referred to the undersigned magistrate judge for a report of findings and recommendation. The motion came on for hearing. *See* Docket Nos. 32, 37.[2] For the reasons discussed below, the undersigned **RECOMMENDS** that the case be **REMANDED** for further consideration.

---

[1] The pagination on the briefing does not match the pagination assigned by CM/ECF. The Court cites herein to the pagination provided by CM/ECF.

[2] Citations herein to the hearing will be to the audio recording, as no written transcript is currently available.

## I. STANDARDS

### A. Judicial Standard of Review

The Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are deemed conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). To that end, the Court must uphold the Commissioner's decision denying benefits if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In determining whether the Commissioner's findings are supported by substantial evidence, the Court reviews the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

Under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Consequently, the issue before this Court is not whether the

Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent on the ALJ to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See, e.g., Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

B.  Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. *See, e.g.*, 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made and no further evaluation is required. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is

currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). The residual functional capacity is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929;

4

SSRs 96-4p, 96-7p.[3] To the extent that statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927.

The fourth step requires the ALJ to determine whether the individual has the residual functional capacity to perform his past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the residual functional capacity to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If he is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

**II.    BACKGROUND**

A.    Procedural History

On August 19 and September 25, 2013, Plaintiff filed applications for disability insurance benefits and supplemental security income alleging that she became disabled on August 15, 2013.

---

[3] SSR 96-7p has been superseded by SSR 16-3p, which became effective after the ALJ's decision in this case. *See* Docket No. 19 at 7 n.4.

5

*See, e.g.*, Administrative Record ("A.R.") 206-221. Plaintiff's claims were denied initially on June 17, 2014, and upon reconsideration on July 18, 2014. A.R. 111-21, 132-37. On July 24, 2014, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). A.R. 138-39. On December 9, 2015, Plaintiff, Plaintiff's representative, and a vocational expert appeared for a hearing before ALJ David K. Gatto. *See* A.R. 32-49. On March 21, 2016, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability, as defined by the Social Security Act, through the date of the decision. A.R. 5-27. On March 6, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. A.R. 1-4.

On May 10, 2017, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). *See* Docket No. 1.

B. The Decision Below

The ALJ's decision followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. A.R. 8-21. At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016, and has not engaged in substantial gainful activity since August 15, 2013. A.R. 10. At step two, the ALJ found that Plaintiff has the following severe impairments: bipolar affective disorder, depressed with psychotic features; major depressive disorder; and unspecified anxiety. A.R. 10-11. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. A.R. 11-12. The ALJ found that Plaintiff has the residual functional capacity to perform

> a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to understanding, remembering, and carrying out work instructions and exercising judgment to perform simple, routine, and repetitive work tasks with brief and superficial interaction with co-workers and the public; and only occasional changes in work routine to account for reduced stress tolerance.

A.R. 12-19. At step four, the ALJ found Plaintiff is incapable of performing her past relevant work. A.R. 19. At step five, the ALJ found that jobs exist in significant numbers in the national

6

economy that Plaintiff can perform based on her age, education, work experience, and residual functional capacity. A.R. 19-20. In doing so, the ALJ defined Plaintiff as a younger individual aged 18-49 at the time of the alleged disability onset date with at least a high school education and able to communicate in English. A.R. 19. The ALJ found the transferability of job skills immaterial. A.R. 19. The ALJ considered Medical Vocational Rules, which provide a framework for finding Plaintiff not disabled, along with vocational expert testimony that an individual with the same residual functional capacity and vocational factors could perform work as an office cleaner, laundry worker, and assembler. A.R. 19-20.

Based on all of these findings, the ALJ found Plaintiff not disabled and denied the applications for a period of disability and disability insurance benefits and supplemental security income. A.R. 20-21.

## III.   ANALYSIS AND FINDINGS

The most significant dispute before the Court is whether the ALJ properly discounted the opinions of Plaintiff's doctors as to her mental health. Docket No. 16 at 12-17. Plaintiff argues that, *inter alia*, the opinions of Dr. Emmanuel Nwapa and Dr. Judy Seymore provide a basis on which to find Plaintiff disabled and that the ALJ improperly discounted these opinions. *See, e.g*, *id.* at 14-17. The Commissioner responds that the ALJ properly discounted these opinions on various grounds. *See* Docket No. 19 at 4-7.

A treating physician's medical opinion as to the nature and severity of an individual's impairment is entitled to controlling weight when that opinion is well-supported and not inconsistent with other substantial evidence in the record. *See, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). Even when not controlling, such opinions are entitled to deference and must be weighed properly pursuant to applicable regulations. *See, e.g.*, *id.* Nonetheless, the opinion of a treating physician is not necessarily conclusive as to the existence of an impairment or the ultimate issue of a claimant's disability. *See, e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). If a treating doctor's opinion is contradicted by another doctor, the ALJ may reject the treating doctor's opinion by providing "specific and legitimate reasons"

supported by substantial evidence in the record. *See, e.g.*, *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

### A.  Dr. Nwapa

The ALJ recognized that Dr. Nwapa is Plaintiff's treating physician and that he opined that Plaintiff's functional limitations related to her mental health would preclude her from working at the level of substantial gainful activity. A.R. 16. The ALJ rejected the opinion of Dr. Nwapa as inconsistent with the "conservative" nature of Plaintiff's treatment and as inconsistent with signs that Plaintiff's condition had improved, among other reasons. The Court will address those reasons in turn below.

#### 1.  Conservative Treatment

The ALJ found that "Dr. Nwapa has conservatively treated the claimant with medication [and] there was no evidence showing more aggressive treatment." *Id.* Plaintiff argues that the ALJ improperly discounted the opinion of Dr. Nwapa based on "conservative" treatment because such finding lacks substantial evidence in light of Plaintiff's psychiatric hospitalizations, regular therapy sessions, and treatment through mental health medications. *See, e.g.*, Docket No. 16 at 15. The Commissioner disagrees, arguing that the ALJ could properly find that Plaintiff's medications were not indicative of aggressive treatment and that her hospitalizations could be consistent with conservative treatment since they were not involuntary. *See, e.g.*, Hearing Tr. (08/07/2018) at 2:08-2:21 p.m. Plaintiff has the better argument.[4]

When supported by substantial evidence, an ALJ may properly discount a physician's opinion that is inconsistent with the conservative nature of the claimant's treatment. *See, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The Ninth Circuit and other courts have recognized within the context of mental health conditions that the prescription of psychiatric

---

[4] As a threshold matter, the ALJ relies without elaboration on the fact that the record failed to show that Plaintiff engaged in "more aggressive treatment" than what is discussed herein. A.R. 16. Problematically, the ALJ does not specify what additional or more aggressive treatment someone with Plaintiff's symptoms would or should have been receiving. *Cf. Quiroz v. Berryhill*, Case No. 8:16-cv-02127-GJS, 2018 WL 922130, at *7 (C.D. Cal. Feb. 14, 2018). Extreme treatment for mental health impairments is not a condition precedent to receiving social security benefits. *Id.*

8

medications is not indicative of conservative treatment. *E.g., Drawn v. Berryhill*, 728 Fed. Appx. 637, 642 (9th Cir. 2018) (unpublished decision holding that the ALJ erred in finding the claimant's treatment to be conservative "given that she was prescribed a number of psychiatric medications").

> Much treatment of mental disorders involves medication management, and it is unpersuasive to call this 'conservative treatment,' and state that therefore a claimant does not have a severe impairment. Where mental activity is involved, administering medications that can alter behavior shows anything but conservative treatment.

*Baker v. Astrue*, Case No. ED CV 09-01078 RZ, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010).

In this case, the ALJ indicated repeatedly that Plaintiff's prescribed drug regimen was a "conservative" and "routine" course of treatment. *E.g.*, A.R. 17. The record reveals that Plaintiff was prescribed Seroquel, Zyprexa, Lithium, and Geodon, among other medications. *See* A.R. 366, 421, 830, 917. Plaintiff's prescriptions were monitored and adjusted in conjunction with regular in-person appointments with Dr. Nwapa and Dr. Seymore. *See, e.g.*, A.R. 830, 917. This was not a conservative course of treatment, and the ALJ erred in concluding otherwise. Seroquel is a "strong" psychiatric medication. *Dallas v. Colvin*, Case No. CV-13-02044-PHX-JZB, 2015 WL 1097309, at *6 (D. Ariz. Mar. 6, 2015). Numerous courts "specifically have recognized that the prescription of . . . Seroquel connotes mental health treatment which is not 'conservative,' within the meaning of social security jurisprudence." *Johnson v. Colvin*, Case No. ED CV 13-1476-PA (E), 2014 WL 2586886, at *5 (C.D. Cal. Mar. 18, 2014), *adopted*, 2014 WL 2589777 (C.D. Cal. June 7, 2014); *accord Quiroz*, 2018 WL 922130, at *7 ("it is entirely unclear to the court how treatment with such medications [as Seroquel] could be characterized as conservative"); *see also, e.g., Garrett v. Berryhill*, Case No. 2:14-cv-2774 DB, 2017 WL 950467, at *8 & n.6 (E.D. Cal. Mar. 10, 2017); *Pearson v. Berryhill*, Case No. ED CV 17-563-E, 2017 WL 4862756, at *4 (C.D. Cal. Oct. 25, 2017); *Scarborough v. Berryhill*, Case No. 2:15-cv-0146 DB, 2017 WL 896283, at *5 (E.D. Cal. Mar. 7, 2017); *Ros v. Berryhill*, Case No. 2:15-cv-2389 DB, 2017 WL 896287, at *5 (E.D. Cal. Mar. 7, 2017); *Wyatt v. Colvin*, Case No. ED CV 15-1961 SS, 2016 WL 6102335, at *6 (C.D. Cal. Oct. 19, 2016); *Dallas*, 2015 WL 1097309, at *6; *Benjamin v. Colvin*, Case No. ED CV 13-2343-E, 2014 WL 4437288, at *3 (C.D. Cal. Sept. 9, 2014); *Jepson v. Colvin*, Case No. ED

CV 13-1310 AN, 2014 WL 808017, at *1, 2 (C.D. Cal. Feb. 28, 2014); *Mason v. Colvin*, Case No. 1:12-cv-00584 GSA, 2013 WL 5278932, at *3, 6 (E.D. Cal. Sept. 18, 2013); *Armstrong v. Colvin*, Case No. CV 12-7060-CW, 2013 WL 3381352, at *5 (C.D. Cal. July 8, 2013).[5]

As with Seroquel, the other prescriptions of record connote aggressive treatment. For example, Lithium and Geodon are "powerful" medicines. *Carden v. Colvin*, Case No. 2:13-3856-E, 2014 WL 839111, at *5 (C.D. Cal. Mar. 4, 2014). Ample case law exists within the Ninth Circuit concluding that an ALJ errs in describing as conservative the prescription of such drugs as Lithium, Geodon, and Zyprexa. *See, e.g.*, *id.* at *3 (collecting cases and holding that prescriptions of, *inter alia*, Zyprexa, Geodon, Lithium and Seroquel was not "conservative" within the meaning of social security jurisprudence); *Sandberg v. Comm'r of Soc. Sec. Admin.*, Case No. 3:14-cv-00810-ST, 2015 WL 2449745, at *6 (D. Or. May 22, 2015) ("Prescription medicine such as Lithium is certainly not conservative"); *Johnson*, 2014 WL 2586886, at *5 (prescription of Seroquel and Geodon "connotes mental health treatment which is not 'conservative'"); *Gentry v. Colvin*, Case No. 1:12-cv-01825-SKO, 2013 WL 6185170, at *12 (E.D. Cal. Nov. 26, 2013) ("Prescription medication such as Zyprexa, however, is not conservative").

Courts have concluded that it is error to describe as conservative a course of treatment including psychiatric drugs like those in the record here, even in instances in which there is no history of hospitalization. *See, e.g.*, *Scarborough*, 2017 WL 896283, at *5. The ALJ's error in this case is exacerbated by the fact that Plaintiff was psychiatrically hospitalized on at least two occasions. Plaintiff was psychiatrically hospitalized for several days in 2009 for major depressive disorder with psychotic features. *See, e.g.*, A.R. 365-66. Plaintiff was again hospitalized for nearly a month in 2013 after the alleged onset date for severe depression, suicidal ideation, and psychotic symptoms. *See, e.g.*, A.R. 421-26.[6]

---

[5] The Commissioner cited case law in urging a contrary conclusion. Hearing Tr. (08/07/2016) at 2:08-2:11 p.m. All of the cases cited by the Commissioner predate the Ninth Circuit's guidance provided in *Drawn*. At any rate, the undersigned finds the cases cited by the Commissioner to be less persuasive than those cited herein.

[6] It appears this hospitalization began as inpatient, but Plaintiff was subsequently transitioned into a "partial hospitalization" program. A.R. 421 ("This patient was inpatient and then stepped down to the PHP"). Plaintiff represents that the "partial hospitalization" involved

The ALJ expressly acknowledged these hospitalizations, but still found Plaintiff's treatment to be conservative in nature. *See, e.g.*, A.R. 15-18. Courts have routinely rejected as unsupported the characterization of treatment as conservative when the record reveals psychiatric hospitalization. *See Honda v. Berryhill*, Case No. 16-cv-06843-VC, 2017 WL 6209296, at *1 (N.D. Cal. Dec. 8, 2017); *Courneya v. Colvin*, Case No. CV-12-5044-JTR, 2013 WL 5988917, at *4 (E.D. Wash. Nov. 12, 2013); *McPherson v. Astrue*, Case No. 3:12-cv-0087-HRH, 2013 WL 12119563, at *6 (D. Alaska Feb. 6, 2013); *see also Tammy L.O. v. Comm'r, Soc. Sec. Admin.*, Case No. 3:17-cv-774-SI, 2018 WL 3090196, at *13 (D. Or. June 20, 2018) (finding ALJ erred in characterizing treatment as conservative given outpatient hospitalizations); *Matthews v. Astrue*, Case No. EDCV 11-01075-JEM, 2012 WL 1144423, at *9 (C.D. Cal. Apr. 4, 2012) (same). Indeed, reasoning similar to that proffered by the ALJ in this case has been found to be "disingenuous" elsewhere. *Dessert v. Berryhill*, Case No. 3:17-cv-2306-MMA (RNB), 2018 WL 3361146, at *3 (S.D. Cal. July 10, 2018) (rejecting reasoning that alleged mental limitations were "inconsistent with the very conservative nature of [plaintiff's] mental health treatment other than the two brief inpatient hospitalizations"), *adopted*, 2018 WL 3570223 (S.D. Cal. July 25, 2018). The Commissioner identifies no contrary authority on appeal, Hearing Tr. (08/07/2018) at 2:13 p.m.,[7] and the undersigned finds the above cases to be persuasive.

---

intensive outpatient care in which she was treated during the day but slept at home at night. *See* Hearing Rec. (08/07/2018) at 2:12 p.m.

[7] The Commissioner argues that substantial evidence supports the ALJ's characterization of Plaintiff's treatment as conservative because her hospital admissions were not involuntary. *See* Hearing Tr. (08/07/2018) at 2:14 – 2:16 p.m. Not so. "Nothing in Social Security jurisprudence requires mentally impaired claimants to be subject to harsh treatments—**whether involuntary psychiatric hospitalizations**, electroshock, or whatever other non-'routine care' the ALJ apparently believes is necessary to prove that a mentally ill claimant actually suffers from the functional limitations found by her treating psychiatrist—before they can be found to be disabled." *Quiroz*, 2018 WL 922130, at *7 (emphasis added).

The Commissioner also suggests that the import of Plaintiff's hospitalizations is undermined by the fact that she suffered mental health episodes at other times without presenting herself to the hospital for admission. *See* Hearing Tr. (08/07/2018) at 2:20 p.m. "[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citations and quotation omitted). The Court rejects the contention that Plaintiff's failure to seek hospitalization for earlier "breakdowns" is evidence that her actual hospital admissions were somehow insignificant.

In short, the record establishes that Plaintiff was psychiatrically hospitalized and was treated with prescriptions of powerful mental health medications in conjunction with her regular therapy sessions. The ALJ's conclusion that Plaintiff was subject only to routine and conservative treatment lacks substantial evidence and it was error to discount the opinion of Dr. Nwapa on that basis. Moreover, this error permeates the decision below. *See* A.R. 15-18 (asserting ten times that Plaintiff's treatment was "conservative" or "routine"). The error was not harmless. *See, e.g.*, *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (harmless error doctrine applies in social security context when the reviewing court can "confidently conclude" that the error was "inconsequential to the ultimate nondisability determination").

### 2.   Periods of Improvement

The ALJ also rejected Dr. Nwapa's opinion as inconsistent with aspects of the record that reflect improvement in Plaintiff's condition. *See, e.g.*, A.R. 17. Plaintiff argues that such a finding is improper because the ALJ failed to establish that the improvements reflect anything beyond a temporary waxing and waning of symptoms that is common with Plaintiff's mental health conditions. *See* Docket No. 16 at 14-15; *see also* Docket No. 25 at 3-4. The Commissioner argues that the record provides substantial evidence to show that the improvement displayed was a proper reason to discount Dr. Nwapa's opinion. *See* Docket No. 19 at 4; *see also* Docket No. 24 at 3. Plaintiff has the better argument.

The Ninth Circuit has developed a robust body of law regarding the dynamic nature of mental health conditions. "That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in the workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). Instead, the Ninth Circuit has recognized that "[c]ycles of improvement and debilitating symptoms are a common occurrence," such that an ALJ cannot discount attestations of impairment "merely because symptoms wax and wane in the course of treatment." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *see also Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016) ("It is the nature of bipolar disorder that symptoms wax and wane over time"). While a conflict between treatment notes and a treating provider's opinion remains a legally sound reason

for discounting that opinion, an ALJ may not seize on aspects of the opinion that appear to be inconsistent without also accounting for aspects of the treatment records that are consistent. *Holohan*, 246 F.3d at 1205; *see also Ghanim v. Colvin*, 763 F.3d 1154, 1161-62 (9th Cir. 2014); *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200-01 (9th Cir. 2008). The ALJ must instead analyze seemingly inconsistent references in the treatment notes "in context of the overall diagnostic picture" that the provider has drawn. *Holohan*, 246 F.3d at 1205.

For example, in *Holohan*, the record reflected the treating physician's "hopeful comments" that the claimant's condition was improving, including a statement that the claimant was "doing better" and was improving through medication. *Id.* The treatment notes also included, however, indications that the claimant felt demoralized, trapped, anxious and depressed. *Id.* The Ninth Circuit found that the ALJ erred in discounting the treating physician's opinion on the basis of inconsistency with the treatment notes because there was no inconsistency when read in full and in context. *Id.*[8]

These Ninth Circuit decisions persuade the undersigned that the ALJ did not provide sufficient reasons for concluding that Dr. Nwapa's opinion was inconsistent with his treatment notes and other instances of improvement. That conclusion was predicated on aspects of Dr. Nwapa's treatment notes showing that Plaintiff was "currently doing better" and had routine follow-up examinations at which her mental status showed she was substantially normal. A.R. 17.[9] The ALJ noted that Plaintiff was eventually discharged from her hospitalizations after the treatment she received therein resulted in some improvement to her condition. *See, e.g.*, A.R. 15 (noting a GAF of 30 upon hospitalization in 2009 and a GAF of 60 upon release). The ALJ also

---

[8] The Commissioner suggests that *Holohan* is an outlier limited to its facts. Docket No. 24 at 2 ("the holding in *Holohan* is fact specific"). Nothing in *Holohan* provides such an indication and the Commissioner's assertion is belied by the subsequent Ninth Circuit decisions applying *Holohan* that are discussed herein. For example, in *Attmore*, the Ninth Circuit recognized significant aspects of the treatment notes that, "[t]aken in isolation, . . . suggests some medical improvement." 827 F.3d at 877. Nonetheless, the Ninth Circuit concluded that the ALJ erred in relying on that evidence without accounting for other aspects within the record showing that any improvement was temporary in nature. *See id.* at 877-79.

[9] The ALJ also asserted that treatment notes after the writing of Dr. Nwapa's opinion reflected improvement. A.R. 16 ("this opinion was rendered fairly close to the claimant's psychiatric hospitalization, which does not take into account the claimant's improved condition thereafter").

noted that Plaintiff appeared to be "generally normal" when she was evaluated by Dr. Yao. A.R. 18.

While the above records may indicate some improvement by Plaintiff, the ALJ failed to explain why such improvement is sufficiently permanent or meaningful to support a conclusion that Plaintiff is able to work. As noted by Plaintiff, the treatment notes also reflect periods of paranoia, erratic sleeping, racing thoughts, loss of appetite, hallucinations, manic episodes, crying spells, and sadness. *See, e.g.*, A.R. 487, 489, 496, 815, 824-26, 830, 834, 836. Moreover, as noted above, Plaintiff was psychiatrically hospitalized on at least two occasions. A.R. 365-66, 423-26. The mere existence of records reflecting some periods of improvement is not sufficient to reject Dr. Nwapa's opinion. The ALJ fails to explain how the identified examples of improvement suffice to reject Dr. Nwapa's opinion in light of the contrary examples in the record. Stated differently, there is no explanation as to how the ALJ's conclusion is consistent with the overall diagnostic picture.[10]

As with the error in characterizing Plaintiff's treatment as conservative, this error was not harmless. Remand is appropriate for the ALJ to conduct a holistic review of the record and, to the extent the ALJ continues to believe Dr. Nwapa's opinion conflicts with instances of improvement, to explain how that conclusion is consistent with the overall diagnostic picture.

### 3. Other Reasons Provided

The ALJ provided other reasons for rejecting Dr. Nwapa's opinion, such as inconsistency with Plaintiff's daily activities. *See* A.R. 16-17. The parties dispute the sufficiency of these alternative reasons on appeal, but the Court need not resolve those arguments at this juncture. As noted above, the undersigned has already identified two errors that were not harmless in nature.[11]

---

[10] The ALJ frequently couples the discussion of Plaintiff's "improvement" with a characterization of her treatment as "conservative." *See, e.g.*, A.R. 17 ("Dr. Nwapa noted the claimant was 'currently doing 'better' [sic] and conservatively treated with medications (i.e. Seroquel XR, Remeron, Ativan, and Tilpetal)"). For the reasons discussed above, the ALJ erred in finding Plaintiff's treatment to be conservative in nature. This finding also likely impacts the ALJ's holistic review of the record.

[11] Conversely, the undersigned is not persuaded that this is one of the "rare circumstances" in which to award benefits, *see Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014), regardless of the evaluation of the other issues presented on appeal.

The appropriate course is to remand for additional investigation and explanation by the ALJ. As such, the undersigned does not opine on the other reasons articulated by the ALJ for rejecting Dr. Nwapa's opinion.[12]

### 4. Conclusion

Accordingly, the undersigned concludes that the ALJ erred in finding Plaintiff's course of treatment to be conservative in nature. The undersigned also concludes that the ALJ failed to explain how a holistic review of the record, taking into account the "context of the overall diagnostic picture," supports the finding that Dr. Nwapa's opinion was inconsistent with instances in the record of Plaintiff's improvement. The undersigned therefore recommends that this case be remanded for further consideration.

### B. Dr. Seymore

The parties also dispute the appropriateness of the ALJ's handling of the opinion of Dr. Seymore. Plaintiff argues that Dr. Seymore's opinion supports a finding that Plaintiff is disabled, but that the ALJ improperly discounted that opinion. *See* Docket No. 16 at 15-16. The Commissioner counters that the ALJ treated Dr. Seymore's opinion appropriately given the nature of the treatment being provided. *See* Docket No. 19 at 5-6.

The ALJ provided a brief discussion of Dr. Seymore's treatment of Plaintiff, concluding that it showed that Plaintiff "was conservatively treated with medications and her mental status examinations were generally normal." A.R. 16. For the reasons discussed above with respect to Dr. Nwapa, the ALJ erred in so finding. First, the record cited by the ALJ showed Plaintiff was being treated with a prescription for, *inter alia*, Seroquel, A.R. 917, which is not properly considered conservative treatment. Second, even assuming Plaintiff showed some signs of "normal" mental health, the ALJ has not sufficiently explained how any such improvement provides a basis for discounting Dr. Seymore's opinion based on the overall diagnostic picture.

---

[12] On remand, the ALJ's holistic review of the record may also color the analysis of the other reasons articulated. *Cf. Ghanim*, 763 F.3d at 1162 (holding that evaluation of daily activities requires a "holistic review of the record"). The ALJ shall reevaluate these other determinations on remand.

Accordingly, the ALJ erred in finding the treatment to be conservative in nature and did not provide a sufficient basis to discount the opinion based on periods of improvement. Remand is appropriate.[13]

## IV. CONCLUSION

Based on the forgoing, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion for Reversal and/or Remand (Docket No. 16) be **GRANTED**, that Defendant's Cross-Motion to Affirm (Docket No. 19) be **DENIED**, and that this case be **REMANDED** for further proceedings.

Dated: August 20, 2018

_____
Nancy J. Koppe
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

---

[13] Plaintiff raises on appeal two other perceived errors by the ALJ regarding the credibility of her testimony and of lay witness testimony. Docket No. 16 at 17-20. Given the recommendation to remand for further proceedings, the undersigned does not opine on these arguments. *Cf. Pearson*, 2017 WL 4862756, at *5 n.4. As the ALJ's reevaluation of the record may color those credibility determinations, however, the ALJ shall also reevaluate those determinations on remand.